WARD, Judge.
Mitomke, Inc., is the owner of a bar and lounge at 829 Elmira Street in New Orleans. Since purchasing the property in 1973, Mitomke has leased the premises to United Management, Inc. In 1981, United Management, Inc. subleased the premises to Doris Ducre. Shortly after entering into the sublease, Ms. Ducre applied for an alcoholic beverage permit needed for the continued operation of the bar. The Alcoholic Beverage Control Commission denied her application, and Mitomke, Inc., United Property Management, Inc. and Doris Du-cre filed an appeal from the denial in Civil District Court for the Parish of Orleans. The District Court affirmed the denial of the permit, and Plaintiffs have brought this appeal. For the reasons discussed below, we reverse the judgment of the District Court.
The Municipal Code for the City of New Orleans, Ordinance No. 828 M.C.S., Section 5-45, provides that no alcoholic beverage permit shall be granted for the opening of any barroom where alcoholic beverages are sold at retail to be consumed on the premises within three hundred feet of any church. This section does not affect bars that were in operation prior to its adoption unless there is an interruption in the continuity of the business for a period in excess of six months. In order to reopen for business after such an interruption, the provisions of Section 5-45 must be complied with. Ordinance No. 828, M.C.S., Section 5 — 46.
Ducre’s application was denied because the bar she subleased is within three hundred feet of a church. Although the bar was in operation prior to the adoption of *799 Section 5 — 45, the records of the Collector of Revenue for the City of New Orleans indicated that the bar went out of business on April 30, 1980. The records were based on information received from the sublessee at that time, Mr. Ben White. Relying on his report that the bar had closed, The Collector of Revenue removed the bar from the taxation roles. Contrary to the information received from Mr. White, however, the bar did not go out of business on April 30,1980; the evidence proves that White continued to operate the bar and that it was in business continuously until the denial of Ms. Ducre’s permit application in March, 1981.
According to the testimony of a representative of the Collector of Revenue, if a bar is in operation contrary to the records of that department and without being on the taxation roles, the bar is operating illegally, and the Collector considers it to be closed for the purpose of determining compliance with Sections 5-45 and 5-46. Because the Collector’s records indicated that there had been an interruption in the business of the bar in question since April, 1980, the provisions of Section 5-45 became applicable, and Ms. Ducre’s application was denied for failure to comply with that section.
We do not question the validity of the Collector’s policy of considering illegal operation as an “interruption in the continuity of the business”, and considering only the facts as set forth above, we would be inclined to affirm the judgment of the District Court. We reverse, however, because we find that there are other significant facts in this case which justify invocation of our equity jurisdiction.
The evidence proves that until March, 1981, when Ducre’s application was denied, neither the owner nor the sublessor of the bar was made aware that Mr. White had reported to the Collector that the business had closed in April, 1980. At all pertinent times, the bar appeared to be operating as usual. Under Mr. White’s sublease, it was his responsibility to pay the taxes and, until Ms. Ducre’s application was denied, Mr. White’s default was not apparent to Mi-tomke, Inc. or United Property Management, Inc. By the time they were made aware of Mr. White’s false report, as far as the Collector of Revenue was concerned, the privilege of operating a bar at that location had been lost. Thus, if the denial of the permit is affirmed, the owner will suffer the loss of a substantial property right, not as a result of its own actions, but solely as a result of the actions of the sublessee who, unbeknown to the owner or sublessor, provided false information to the Collector of Revenue obviously for the purpose of avoiding payment of license fees and sales taxes.
Plaintiffs argue that the owner is protected from such a harsh result by a provision in the Comprehensive Zoning Ordinance for the City of New Orleans which provides in pertinent part:
“No building or portion thereof or land used in whole or in part for nonconforming purposes according to the provisions of this Ordinance, which hereafter becomes and remains vacant for a continuous period of 6 calendar months shall again be used except in conformity with the regulations of the district in which such building or land is situated.... [I]f the lessee of any building or place used or occupied for nonconforming purposes under a bona fide lease shall at any time before the expiration of said lease cease to occupy or use said building for nonconforming purposes, said building or land shall not be considered vacant until the owner of said building or place shall again obtain legal control of its occupancy and use; but this exemption shall not apply if the owner for any reason be entitled legally to regain possession and does not by legal or other effective means attempt so to do.... ” Article 12, Section 2 of the Comprehensive Zoning Ordinance of the City of New Orleans.
Article 12, Section 2, however, is applicable only to buildings or land in use that is nonconforming according to the provisions of the Comprehensive Zoning Ordinance, and not to buildings or land in use that is nonconforming as to other ordinances. The operation of the bar at the location in question conforms to the provisions of the Com *800 prehensive Zoning Ordinance; it is only nonconforming as to an ordinance contained in the Code of the City of New Orleans.
The quoted provision of the Comprehensive Zoning Ordinance is similar to Sections 5-45 and 5-46 of the Code of the City of New Orleans to the extent that the privilege to continue in nonconforming use is lost after a six month “vacancy” (in a zoning case) or “interruption in the continuity of the business” (in a case involving an alcoholic beverage permit). The provisions are dissimilar, however, to the extent that the Comprehensive Zoning Ordinance explicitly provides protection for a property owner against actions of a lessee that would be detrimental to the privilege to continue in nonconforming use, while the provisions of the Code of the City of New Orleans, upon which the permit denial in this case was based, do not provide such protection to the property owner. Thus, there is a great disparity between the protection legally afforded to the property-owner-lessor in a zoning case and the total lack of protection of a property-owner-lessor in an alcoholic beverage permit case.
Although Article 12, Section 2, of the Comprehensive Zoning Ordinance is only applicable in zoning cases, we note that the property owner in this case faces the same dilemma that prompted the enactment of the protective provisions of Article 12, Section 2. Absent such a provision, property owners in both zoning and alcoholic beverage permit cases could lose a substantial property right due to actions of a tenant that are beyond the knowledge or control of the owner. The only appreciable difference between the property owners is that one owns land in use that is nonconforming as to the zoning ordinance, and the other owns land in use that is nonconforming as to the alcoholic beverage ordinances. This distinction does not justify the disparate treatment of the property owners under the law. Therefore, equity dictates that the protection afforded to the property owners in a zoning case be extended to property owners, such as Mitomke, in an alcoholic beverage permit case. An equitable interpretation of Sections 5-45 and 5-46 is necessary to avoid a violation of procedural due process which would occur if the property owner were to be deprived of a substantial property right without notice and a meaningful opportunity to be heard.
We need not, and do not, hold that this protection is to be extended to property owners in every alcoholic beverage permit case where a permit is denied due to actions of the tenant. The terms of Article 12, Section 2, limit the application of that section to cases where the owner is not legally entitled to regain possession. The protection hereby extended to property owners in alcoholic beverage permit cases should likewise be limited to owners who are not entitled to regain possession. We would also limit our holding to cases, such as the instant one, in which the property owner is not notified by the Collector of Revenue or by the lessee, or is not otherwise notified that a liquor license has been surrendered or that the business is being removed from the taxation roles due to a report of a tenant that the business is closed.[1]
In summation we believe denial of a permit is proper where the bar in question was in operation prior to the enactment of Section 5-45, but has been operated illegally with knowledge of the owner for more than six months prior to an alcoholic beverage permit application. Considering the facts of the instant case, however, we believe that equity requires that we reverse the denial of the permit application to avoid the harsh result of depriving the property-owner of a substantial property right due to actions of a tenant of which the owner had no knowledge.
For the foregoing reasons, the judgment of the District Court is reversed.

. Although permit applicants are required to supply the name and address of the property owner in their applications, a representative of the Collector of Revenue testified that the Collector does not notify owners of actions taken in reliance on a tenant’s report.